## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## (Eastern Division)

**In re:**

**TOP TIER SITE DEVELOPMENT, LLC,**

**Debtor.**

**Chapter 11**

**Case No. 17-14107-JNF**

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF DEBTOR AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

**JAMES P. EHRHARD, ESQ.**
Ehrhard & Associates, P.C.
250 Commercial Street, suite 410
Worcester, MA 01608

Telephone: (508) 791-8411
Facsimile: (508) 75206168

**JEFFREY D. STERNKLAR, LLC**
225 Franklin Street
26th Floor
Boston, MA 02110
Jeffrey D. Sternklar, Esq.

Telephone: (617) 396-4515
Facsimile: (617) 507-6530

Dated: December 7, 2018

Top Tier Site Development, LLC, the debtor and debtor-in-possession, and the Official Committee of Unsecured Creditors (the "***Plan Proponents***"), hereby propose the following joint first amended chapter 11 plan (as amended, the "***Plan***") under Section 1121 of the United States Bankruptcy Code.

# ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of the Plan, the following terms shall have the meanings specified in this Article I. A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated. The words "in the Plan," "the Plan," "hereto," "herein", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions the Plan.

**1.1** "Administrative Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including Professional Fee Claims.

**1.2** "Affiliate" shall mean any Person that is an affiliate of the Debtor or the Confirmed Debtor under the Bankruptcy Code.

**1.3** "Allowed" shall mean, with reference to any Claim or Equity Interest:

(a) A Claim or Equity Interest that has been listed by a Debtor in its Schedules or its List of Equity Holders, as applicable, and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim or Equity Interest as to which a proof of claim or interest has been filed;

(b) A Claim or Equity Interest as to which a timely proof of claim or interest has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Non-Appealable Order;

(c)      A Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)      Any Claim or Equity Interest expressly allowed under the Plan, pursuant to a Non-Appealable Order of the Bankruptcy Court, or pursuant to the Confirmation Order.

**1.4**      "<u>Asset(s)</u>" shall mean all real or personal property of the Debtor, whether tangible or intangible and wherever situated, together with the proceeds thereof.

**1.5**      "<u>Avoidance Actions</u>" shall mean Causes of Action arising or held by the Debtor under Sections 502, 510, 541, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

**1.6**      "<u>Bankruptcy Case</u>" shall mean the above-captioned Debtor's bankruptcy case pending in the Bankruptcy Court.

**1.7**      "<u>Bankruptcy Code</u>" shall mean Title 11 of the United States Code, as amended from time to time.

**1.8**      "<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the District of Massachusetts in which the Bankruptcy Cases are pending and, to the extent of any reference under 28 U.S.C. §157, the unit of such District Court specified pursuant to 28 U.S.C. §151.

**1.9**      "<u>Bankruptcy Rules</u>" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.10**      "<u>Bar Date</u>" shall mean the date fixed by an order of the Bankruptcy Court (including the order dated December 15, 2017 [Dkt. 34]) as the last date by which Persons asserting certain Claims against the Debtor must file a proof of claim or interest or be forever barred from asserting a Claim against the Debtor or its Assets, from voting on the Plan and/or sharing in distributions under the Plan.

**1.11**      "<u>Beneficial Interests</u>" shall mean interests in the Liquidating Trust as described in this Plan.

**1.12**      "<u>Bond Street Servicing Secured Claim</u>" shall mean and refer to the Secured Claim held by Bond Street Servicing, or its successor.

**1.13**      "<u>Bonus</u>" shall mean the sum of (i) the Initial Bonus Payment, and (ii) the Second Bonus Payment.

**1.14** "Building Sale Proceeds" shall mean the proceeds from the sale of the building located at 210 Kenneth Welch Drive, Lakeville, Massachusetts, and held in the IOLTA clients funds account of Jeffrey D. Sternklar LLC, and that are in the amount of $127,346.74 as of November 30, 2018.

**1.15** "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts."

**1.16** "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**1.17** "Cash Collateral" shall mean cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents that are subject to a Lien securing an Allowed Claim.

**1.18** "Cash Equivalents" shall mean equivalents of Cash in the form of readily marketable securities or instruments issued by a Person other than the Debtor or an Affiliate, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest-bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions on the list of approved depository institutions maintained by the Office of the United States Trustee.

**1.19** "Causes of Action" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, (a) Avoidance Actions, (b) rights of setoff, counterclaim and recoupment, (c) claims and defenses on contracts or for breaches of duties imposed by law, (d) the right to object to claims or interests, (e) claims and defenses pursuant to Section 362 of the Bankruptcy Code, (f) claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and usury, (g) claims and defenses for the violation of M.G.L. c. 93A, (h) claims and defenses for unjust enrichment, and (i) claims for tax refunds.

**1.20** "Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment,

or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.21** "<u>Class</u>" shall mean those classes designated in Article III of the Plan.

**1.22** "<u>Collateral</u>" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.23** "<u>Committee</u>" shall mean the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee in the Bankruptcy Cases.

**1.24** "<u>Confirmation Date</u>" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in these Bankruptcy Cases.

**1.25** "<u>Confirmation Hearing</u>" shall mean the hearing before the Bankruptcy Court on confirmation of the Plan.

**1.26** "<u>Confirmation Order</u>" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

**1.27** "<u>Confirmed Debtor</u>" shall mean the Debtor from and after the Effective Date.

**1.28** "<u>Contingent or Unliquidated Claim</u>" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

**1.29** "<u>Cure Claim</u>" shall mean the amount necessary to cure, pursuant to Section 365(b) of the Bankruptcy Code, any defaults in an executory contract or unexpired lease of the Debtor.

**1.30** "<u>Debtor</u>" shall mean Top Tier Site Development, LLC

**1.31** "<u>Deficiency Claim</u>" shall mean the amount by which the Allowed Claim of a creditor exceeds the Allowed Secured Claim of such creditor.

**1.32** "<u>Disclosure Statement</u>" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.33** "<u>Disputed Claim</u>" shall mean:

(a)         If no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)         If a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor or a party with standing to dispute the Claim in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by a Non-Appealable Order; or

(c)         A Claim that is a Contingent or Unliquidated Claim.

**1.34** "Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

**1.35** "Disputed Claims Reserve" shall have the meaning set forth in Section 6.5 of the Plan.

**1.36** "Distribution Record Date" shall mean the date on which the Bankruptcy Court enters an order approving the Disclosure Statement or such other date established by the Bankruptcy Court.

**1.37** "Effective Date" shall mean the first Business Day after the later to occur of (a) the fifteenth day following the entry of the Confirmation Order, provided that no stay pending appeal of the Confirmation Order has been granted, or (b) the date that all conditions precedent to the effectiveness of the Plan have been satisfied or waived by the Debtor.

**1.38** "Encumbered Causes of Action" shall mean all Causes of Action that are Collateral and shall specifically exclude all Avoidance Actions.

**1.39** "Equity Interest" shall mean the interest of any holder of any general or limited partnership interest in or voting or non-voting shares of the Debtor, and all options and/or rights, contractual or otherwise, to acquire at any time any general or limited partnership interest in or voting or non-voting shares of the Debtor.

**1.40** "Escrowed Funds" shall mean the funds in the amount of $177,001.19 deposited into escrow by Robert J. Santoro, Thomas Tripp and Charles Wing pursuant to that Escrow Agreement dated August 6, 2018 between and among Robert J. Santoro, Thomas Tripp, Charles Wing and Jeffrey D. Sternklar.

**1.41** "Estate" shall mean, individually, each separate estate created by a respective Debtor's Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code, and collectively, all of those Estate.

**1.42** "Estate Setoff" means with respect to each and every Claim or Equity Interest, the amount the holder of each such Claim and Equity Interest (or their respective predecessor(s) in interest) owe or may owe to the Debtor, the Estate, the Liquidating Trustee and/or the Confirmed Debtor.

**1.43** "General Unsecured Claim" shall mean a Claim that is: (a) not a Secured Claim, (b) not entitled to priority of payment under Section 507 of the Bankruptcy Code, and (c) not a Claim for an Equity Interest.

**1.44** "Independence Bank Secured Claim" shall mean and refer to the Secured Claim held by Independence Bank, or its successor.

**1.45** "Infinite Solutions" shall mean and refer to Infinite Solutions, Inc.

**1.46** "Infinite Solutions Secured Claim" shall mean and refer to the Secured Claim held by Infinite Solutions, or its successor.

**1.47** "Initial Bonus Payment" shall mean and refer to the sum of the following: (i) all Escrowed Funds deposited into escrow by Robert J. Santoro and Charles R. Wing, Jr., with Jeffrey D. Sternklar, Esq., in the principal aggregate amount of $118,000.79, and excluding the Escrowed Funds deposited into escrow by Thomas Tripp, and (ii) the amount of the Building Sale Proceeds received by the holder of the Allowed Infinite Solutions Secured Claim pursuant to this Plan.

**1.48** "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code, provided that it shall not include the Debtor.

**1.49** "Internal Revenue Code" shall mean Title 26 of the United States Code, as amended from time to time.

**1.50** "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that (a) a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) no lien shall be valid unless approved by a Non-Appealable order of the Bankruptcy Court or by agreement of the Debtor.

**1.51** "Liquidating Trust" means the *"Liquidating Trust of Top Tier Site Development, LLC"* to be established on the Effective Date pursuant to this Plan.

**1.52** "Liquidating Trust Assets" shall mean all of the Debtor's Assets on the Effective Date, and shall include, without limitation, the Debtor's: (a) Cash, and (b) the Net Proceeds from the liquidation of that Debtor's Assets, including without

limitation the prosecution and/or settlement of any Causes of Action, (c) all rights to refunds of any state or federal taxes, and (d) the Bonus.

**1.53** "Liquidating Trustee" shall mean Craig R. Jalbert, or his successor, as the trustee of the Liquidating Trust.

**1.54** "Miscellaneous Secured Claim" shall mean any Secured Claim not specifically classified.

**1.55** "Net Proceeds" shall mean the proceeds of any sale, transfer or other liquidation of an Asset, including (as may be applicable) the prosecution of Causes of Action, less the costs and expenses of selling, transferring, prosecuting and/or liquidating such Asset, including, without limitation, professional fees and expenses, broker's commissions, taxes (including capital gains taxes) and closing costs.

**1.56** "Non-Appealable Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (b) if appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Non-Appealable Order.

**1.57** "Organization Documents" shall mean, as applicable, the Debtor's operating agreements, trust agreements, articles of incorporation, bylaws, corporate minute books and such other documents evidencing the Debtor' formation and/or operation in such jurisdictions in which the Debtor are authorized to conduct business.

**1.58** "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**1.59** "Permitted Investment" shall mean Cash Equivalents having maturities sufficient to enable the Liquidating Trustee to make the payments required under the Plan invested or held in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

**1.60** "Petition Date" shall mean November 2, 2017.

**1.61** "Plan" shall mean this "*Joint Plan of Liquidation of Debtor and Official Committee of Unsecured Creditors*," including, without limitation, any exhibits, supplements, appendices and schedules to the Plan, either in their present form or as the same may be altered, amended or modified from time to time.

**1.62** "Plan Proponents" shall mean the Debtor and the Committee, as proponents of this Plan.

**1.63** "Priority Claims" shall mean all Claims, if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Claims.

**1.64** "Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.65** "Professionals" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.66** "Professional Fee Claims" shall mean the fees and expenses of Professionals under Sections 330, 331, or 503 of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

**1.67** "Proponents" shall mean the Debtor and the Committee, as proponents of the Plan.

**1.68** "Pro Rata" shall mean, when used with reference to a distribution of property under the Plan, proportionately so that with respect to a particular Allowed Claim, the ratio of (i)(1) the amount of property distributed on account of such Claim to (2) the amount of such Claim, is the same as the ratio of (ii)(1) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (2) the amount of all Allowed Claims in that Class.

**1.69** "Representative(s)" shall mean a Person's Affiliates, directors, stockholders, officers, members, managers, employees, controlling persons, agents, counsel and advisors of any kind, and the directors, stockholders, officers, members, managers, employees, controlling persons, agents, counsel and advisors of any kind of all Affiliates of such Person.

**1.70** "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules,

lists and statements have been or may be supplemented or amended from time to time.

**1.71** "Second Bonus Payment" shall mean and refer to any and all amounts distributable to Charles R. Wing, Jr. and Robert J. Santoro from or on account of their respective Class 7 Equity Interests equal to twenty percent (20%) of the amount of all Allowed Class 6 Claims.

**1.72** "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.73** "Secured Lender Solutions" shall mean and refer to Secured Lender Solutions, LLC.

**1.74** "Secured Lender Solutions Secured Claim" shall mean and refer to the Secured Claim held by Secured Lender Solutions, or its designee.

**1.75** "Senior" shall mean (a) with respect to an Allowed Claim, any other Allowed Claim that is entitled to a priority of distribution under the Bankruptcy Code over the subject Allowed Claim, and (b) with respect to a Lien, any other Lien on the same Collateral that is entitled to precedence over the subject Lien with respect to such Collateral.

**1.76** "Tripp" shall mean and refer to Thomas H. Tripp.

**1.77** "Tripp Secured Claim" shall mean and refer to the Secured Claim held by Tripp, or his successor.

**1.78** "Tax Returns" shall mean all state and federal tax returns, reports, certificates, forms or similar statements or documents.

**1.79** "Unencumbered Causes of Action" shall mean all Causes of Action that are not Collateral and shall include all Avoidance Actions.

## ARTICLE II

## TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS

**2.1    Non-Classification.**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against the Debtor are not classified for the purposes of voting on, or receiving distributions under, the Plan.  All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

## 2.2 Administrative Claims.

(a) <u>General</u>. If any portion of an Administrative Claim is disputed, the Allowed amount of such Administrative Claim shall be paid after the entry of a Non-Appealable Order Allowing such disputed Administrative Claim. Except for Professional Fee Claims, each holder of an Allowed Administrative Claim shall receive: (i) on the later to occur of the date such Allowed Administrative Claim becomes due in accordance with its terms or the date it is Allowed, payment in full from the Liquidating Trustee, or (ii) payment as agreed between the holder of the Allowed Administrative Claim and the Debtor or the Liquidating Trustee on behalf of the Confirmed Debtor, as the case may be.

(b) <u>U.S. Trustee's Fees</u>. The outstanding fees due to the United States Trustee pursuant to 11 U.S.C. § 1930 shall be paid in full on or before the Effective Date.

(c) <u>Professional Compensation and Expense Reimbursement Claims</u>.

(i) Within thirty (30) days after the Effective Date, each Professional retained by the Debtor and/or the Committee shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.

(ii) Any Allowed Professional Fee Claim shall receive: (A) on the later to occur of the date such Professional Fee Claim is Allowed or the date it becomes due in accordance with its terms, payment in full from the Liquidating Trustee, or (B) payment as agreed between the holder of the Allowed Administrative Claim and the Debtor or the Liquidating Trustee on behalf of the Confirmed Debtor, as the case may be.

(iii) All fees and expenses of Professionals for services rendered after the Effective Date shall be paid upon the receipt of reasonably detailed invoices in such amounts and on such terms as such Professional and the Liquidating Trustee agree. No further order or authorization from the Bankruptcy Court shall be necessary to permit the payment of the fees and expenses of Professionals for services rendered after the Effective Date.

## 2.3 Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim, if any, shall receive, on the later to occur of the date such Allowed Priority Tax Claim becomes due in accordance with its terms or the date it is Allowed: (i) after all Senior Allowed Claims have been paid in full, payment in full from the Liquidating Trustee, or (ii) payment as agreed

between the holder of the Allowed Priority Tax Claim and the Proponents or the Liquidating Trustee on behalf of the Confirmed Debtor, as the case may be.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The Claims against and Equity Interests in the Debtor are categorized below for all purposes under the Plan including voting, confirmation and distribution pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.  The Claims against and Equity Interests in the Debtor are separately classified in their own distinct Classes.

### 3.1    Claim and Equity Interest Categories.

Claims against and Equity Interests in the Debtor have been classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Infinite Solutions Secured Claim | Impaired | Yes |
| 2 | Independence Bank Secured Claim | Impaired | Yes |
| 3 | Bond Street Secured Claim | Impaired | Yes |
| 4 | Tripp Secured Claim | Impaired | Yes |
| 5 | Secured Lender Solutions Secured Claim | Impaired | Yes |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Equity Interests | Impaired | Yes |

# ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1  Class 1 – Infinite Solutions Secured Claim**

(a)  <u>Classification</u>.  Class 1 consists of the Infinite Solutions Secured Claim.  Any Deficiency Claim held by the holder of a Class 1 Claim shall be treated as a Class 6 Claim against the Debtor.

(b)  <u>Impairment and Voting</u>.  The Infinite Solutions Secured Claim is impaired under the Plan.  The holder of the Infinite Solutions Secured Claim shall be entitled to vote to accept or reject the Plan.

(c)  <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, discharge and release of the Infinite Solutions Secured Claim, the holder of the Infinite Solutions Secured Claim (a) on the Effective Date shall be deemed to have received and applied to reduce the amount of the Infinite Solutions Secured Claim, the Building Sale Proceeds, which shall be transferred to the Liquidating Trustee as a portion of the Initial Bonus Payment, and (y) on the later to occur of the Effective Date, the date such Claim becomes Allowed and the date the Collateral securing the Infinite Solutions Secured Claim is liquidated, either: (i) the amount of the Net Proceeds of the Collateral securing the Allowed Infinite Solutions Secured Claim in accordance with this Plan, less any Estate Setoff with respect to the Infinite Solutions Secured Claim, or (ii) treatment as agreed between the holder of the Infinite Solutions Secured Claim and the Committee or the Liquidating Trustee, as the case may be..

**4.2 Class 2 – Independence Bank Secured Claims**

(a)  <u>Classification</u>.  Class 2 consists of the Independent Bank Secured Claim.  Any Deficiency Claim held by the holder of a Class 2 Claim shall be treated as a Class 6 Claim against the Debtor.

(b)  <u>Impairment and Voting</u>.  The Independence Bank Secured Claim is  impaired under the Plan.  The holder of the Independence Bank Secured Claim shall be entitled to vote to accept or reject the Plan.

(c)  <u>Claim Treatment</u>.  To the extent the Independence Bank Secured Claim becomes an Allowed Claim, in full and complete satisfaction, settlement, discharge and release of the Independent Bank Secured Claim, the holder of the Independence Bank

Secured Claim shall receive, either: (i) payment of the Net Proceeds of the Collateral securing the Allowed Independence Bank Secured Claim, after all Allowed Class 1 Claims are paid and satisfied in full, in accordance with this Plan, less any Estate Setoff with respect to the Independence Bank Secured Claim, or (ii) treatment as agreed between the holder of the Independence Bank Secured Claim and the Committee or the Liquidating Trustee, as the case may be.

### 4.3 Class 3 Tripp Secured Claim

(a) <u>Classification</u>. Class 3 consists of Tripp Secured Claim. Any Deficiency Claim held by the holder of a Class 3 Claim shall be treated as a Class 6 Claim against the Debtor.

(b) <u>Impairment and Voting</u>. The Tripp Secured Claim is impaired under the Plan. The holder of the Tripp Secured Claim shall be entitled to vote to accept or reject the Plan.

**(c)** <u>Claim Treatment</u>. To the extent the Tripp Secured Claim becomes an Allowed Secured Claim, in full and complete satisfaction, settlement, discharge and release of the Tripp Secured Claim, the holder of the Tripp Secured Claim shall receive, either: (i) payment of the Net Proceeds of the Collateral securing the Allowed Tripp Solutions Secured Claim, after all Allowed Class 1 Claims and Allowed Class 2 Claims are paid and satisfied in full, in accordance with this Plan, less any Estate Setoff with respect to the Tripp Secured Claim, or (ii) treatment as agreed between the holder of the Tripp Secured Claim and the Committee or the Liquidating Trustee, as the case may b**e.**

### 4.4 Class 4 Bond Street Secured Claim

(a) <u>Classification</u>. Class 4 consists of Bond Street Secured Claim. Any Deficiency Claim held by the holder of a Class 4 Claim shall be treated as a Class 6 Claim against the Debtor.

(b) <u>Impairment and Voting</u>. The Bond Street Secured Claim is impaired under the Plan. The holder of the Tripp Secured Claim shall be entitled to vote to accept or reject the Plan.

(d) <u>Claim Treatment</u>. To the extent the Bond Street Secured Claim becomes an Allowed Secured Claim, in full and complete satisfaction, settlement, discharge and release of the Bond Street Secured Claim, the holder of the Bond Street Secured Claim shall receive, either: (i) payment of the Net Proceeds of the Collateral securing the Allowed Bond Street Secured Claim, after all Allowed Class 1 Claims, Allowed Class 2 Claims and Allowed

Class 3 Claims are paid and satisfied in full, in accordance with this Plan, less any Estate Setoff with respect to the Bond Street Secured Claim, or (ii) treatment as agreed between the holder of the Bond Street Secured Claim and the Committee or the Liquidating Trustee, as the case may be.

### 4.5 Class 5 Secured Lender Solutions Secured Claim

(a)   Classification.   Class 5 consists of Secured Lender Solutions Secured Claim.  Any Deficiency Claim held by the holder of a Class 5 Claim shall be treated as a Class 6 Claim against the Debtor.

(b)   Impairment and Voting.  The Secured Lender Solutions Secured Claim is impaired under the Plan.  The holder of the Secured Lender Solutions Secured Claim shall be entitled to vote to accept or reject the Plan.

(e)   Claim Treatment.  To the extent the Secured Lender Solutions Secured Claim becomes an Allowed Secured Claim, in full and complete satisfaction, settlement, discharge and release of the Secured Lender Solutions Secured Claim, the holder of the Secured Lender Solutions Secured Claim shall receive, either: (i) payment of the Net Proceeds of the Collateral securing the Allowed Secured Lender Solutions Secured Claim, after all Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims and Allowed Class 4 Claims are paid and satisfied in full, in accordance with this Plan, less any Estate Setoff with respect to the Secured Lender Solutions Secured Claimor (ii) treatment as agreed between the holder of the Secured Lender Solutions Secured Claim and the Committee or the Liquidating Trustee, as the case may be.

### 4.6 Class 6 General Unsecured Claims

(a)   Classification.   Classes 6 consists of the Allowed General Unsecured Claims against the Debtor.

(b)   Impairment and Voting.  The General Unsecured Claims are impaired under the Plan.  Each holder of a General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(c)   Claim Treatment.  In full and complete satisfaction, settlement, discharge and release of their respective Allowed General Unsecured Claims, each holder of an Allowed General Unsecured Claim shall receive, on the later to occur of the Effective Date or the date such Claim becomes Allowed, either (i) a Pro Rata

beneficial interest in the Liquidating Trust, entitling such holder to receive a Pro Rata share of distributions from the Liquidating Trust Assets until such Allowed General Unsecured Claim has been paid in full, or (ii) treatment as agreed between the holder of the Allowed General Unsecured Claim and the Committee or the Liquidating Trustee, as the case may be.

### 4.7 Class 7 Equity Interests

(a) <u>Classification</u>. Class 7 of the Allowed Equity Interests in the Debtor.

(b) <u>Impairment and Voting</u>. The Equity Interests are impaired under the Plan. Each holder of an Equity Interest shall be entitled to vote to accept or reject the Plan.

(c) <u>Claim Treatment</u>. In full and complete satisfaction, settlement, discharge and release of the Allowed Equity Interests, the holder of an Allowed Equity Interest shall receive, either: (1) after all Senior Allowed Claims and the Second Bonus Payment have been paid in full, a Pro Rata share of the proceeds of the Liquidating Trust, or (2) treatment as agreed between the holder of the Allowed Equity Interests and the Committee or the Liquidating Trustee, as the case may be.

### 4.8 Reservation of Rights.

The Plan Proponents reserve the right to, among other things, (a) contest the right of the holder of any Claim or Equity Interest to vote on the Plan or designate the vote of the holder of any Claim or Equity Interest (b) contest the right of the holder of any Claim or Interest to receive distributions under the Plan, and (c) seek to subordinate any Claim or Equity Interest for inequitable conduct or otherwise.

### 4.9 Voting of Claims.

Each holder of an Allowed Claim or Equity Interest entitled to vote on the Plan shall vote on a duly executed and delivered ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

### 4.10 Acceptance by Impaired Classes.

An impaired class of Claims or Equity Interests shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan, and (b) the holders (other than any holder designated under section 1126(e) of the

Bankruptcy Code) of more than one-half in number of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan. A class of Claims or Equity Interests may be deemed, without any further showing by the Proponents, to have accepted the Plan if no member of the class of Claims votes on or objects to the Plan.

**4.11   Nonconsensual Confirmation.**

The Proponents reserve the right (a) to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code, and/or (b) to amend the Plan, in accordance with Section 12.3 of the Plan, to address any objections to confirmation of the Plan and/or the rejection of the Plan by any class of Claims.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1   <u>Plan Implementation</u>.**

Confirmation of the Plan shall constitute authorization for the Debtor to effectuate the Plan and to enter into all documents, instruments and agreements reasonably necessary to effectuate the terms of the Plan. The Debtor shall remain in existence as the Confirmed Debtor until dissolved pursuant to the Plan.

**5.2   <u>Bonus</u>.**

    (a)    <u>Initial Bonus Payment</u>. On the Effective Date, the Initial Bonus Payment shall be removed from escrow and transferred to the Liquidating Trustee for disposition as part of the Liquidating Trust Assets pursuant to the Liquidating Trust Agreement and this Plan.

    (b)    <u>Second Bonus Payment</u>. The Liquidating Trustee shall withhold any distributions to the extent of the Second Bonus Payment otherwise distributable to Robert J. Santoro and Charles Wing, Jr., on account of their Equity Interests, for disposition as part of the Liquidating Trust Assets pursuant to the Liquidating Trust Agreement and this Plan.

    (c)    <u>Effect of Confirmation Order</u>. The Confirmation Order shall operate as authority for (i) Jeffrey D. Sternklar to remove the Initial Bonus from escrow and transfer the Bonus to the Liquidating Trustee, and (ii) for the Liquidating Trustee to withhold distributions to Robert J. Santoro and Charles Wing,

Jr., to the extent of the Second Bonus Payment without any further consent, order or notice.

### 5.3    The Liquidating Trust.

On the Effective Date, the Liquidating Trust shall be created and established. On the Effective Date the Debtor shall execute and deliver the Liquidating Trust Agreement to the Liquidating Trustee in accordance with this Plan, free and clear of any and all Claims, Equity Interests, Liens or encumbrances of any kind and character, except for Liens securing Allowed Secured Claims in Classes 1 – 5, *provided, however*, that the Committee shall have full authority to execute and deliver the Liquidating Trust Agreement on behalf of the Debtor without any liability of or recourse to the Committee, if for any reason the Debtor fails or refuses to execute and deliver the Liquidating Trust Agreement in accordance with this Plan. Following the Effective Date, the liquidation of the Liquidating Trust Assets shall be conducted by the Liquidating Trustee who shall liquidate the Liquidating Trust Assets, object to Disputed Claims and make distributions pursuant to the terms of this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be under an obligation to make continuing efforts to dispose of the Liquidating Trust Assets, make timely distributions, and not unduly prolong the duration of the Liquidating Trust. The Liquidating Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for the United States federal income tax purposes. The Liquidating Trustee shall make distributions to holders of Allowed Claims in Classes 1 – 5 in full before any distribution is made on account of Allowed Class 6 Claims from the Net Proceeds of any Collateral.

### 5.4    Purpose of the Liquidating Trust.

The Liquidating Trust shall be established for the sole purpose of the liquidating and distributing its assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

### 5.5    Liquidating Trust Assets.

On the Effective Date, the Debtor shall be deemed to have distributed the Liquidating Trust Assets (including, without limitation, the Bonus) to holders of Claims and Equity Interests, who shall be deemed to have transferred the Liquidating Trust Assets to the Liquidating Trust. Such transfers shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax. In connection with the transfer of the Liquidating Trust Assets to the Liquidating Trust, all records relating to such Liquidating Trust Assets shall be transferred to the Liquidating Trustee. The Debtor and the Liquidating Trustee are

authorized to take all necessary actions to effectuate the transfer of the Liquidating Trust Assets. All of the Debtor's rights, powers, immunities and privileges, including its attorney-client privilege, shall be deemed transferred to the Liquidating Trustee on the Effective Date. The Liquidating Trustee shall have full power and authority to use all Liquidating Trust Assets (including any Collateral, free and clear of any and all Liens), for purposes of the Liquidating Trust, without further order from the Bankruptcy Court or notice to any Person or Entity.

**5.6** **Collateral.** The Liquidating Trustee shall hold all Collateral and not use all or any portion of the Collateral without the consent of the holder of an Allowed Secured Claim with respect to the Collateral the Trustee intends to use, except (i) the Liquidating Trustee may seek and obtain any order from a court of competent jurisdiction, and use or dispose of such Collateral, as applicable, pursuant to any such court order, (ii) the Liquidating Trustee may use or dispose of all or any part of Collateral to the extent of any Estate Setoff, without the need for any order of any court, and (iii) the Liquidating Trustee shall have and enjoy the right to recover the reasonable, necessary costs and expenses of preserving, or disposing of, such Collateral, regardless of any benefit (or the absence of any benefit) to the holder of any Allowed Secured Claim secured by such Collateral.

**5.7** **Governance of the Liquidating Trust.** The Liquidating Trust shall be governed by the Liquidating Trustee according to the Liquidating Trust Agreement and this Plan.

**5.8** **The Liquidating Trustee.** The Liquidating Trustee shall be Craig R. Jalbert. The Liquidating Trustee shall be deemed to have been appointed as the Estate's representative and otherwise, by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

**5.9** **Removal of Liquidating Trustee.**

The Liquidating Trustee may be removed only for cause upon a motion to the Bankruptcy Court. If the Liquidating Trustee is removed for cause, the Liquidating Trustee shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation. The term "cause" shall mean: (a) the Liquidating Trustee's gross negligence or willful failure to perform his duties under the Plan, (b) the Liquidating Trustee's misappropriation or embezzlement of any Assets or the proceeds of the Assets, or (c) the Liquidating Trustee's continued or repeated negligence or failure to perform his duties under the Plan. If a Liquidating Trustee is unwilling or unable to serve by virtue of his inability to perform his duties due to death, illness, or other physical or mental disability, subject to a final accounting, such Liquidating Trustee shall be entitled to receive all accrued and unpaid fees, reimbursement of expenses, and other compensation incurred before his removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Trustee.

**5.10 <u>Resignation of Liquidating Trustee.</u>**

A Liquidating Trustee may resign upon motion to the Bankruptcy Court, which resignation shall become effective at the time specified by the Court. If a Liquidating Trustee resigns from his position hereunder, subject to a final accounting, such Liquidating Trustee shall be entitled to receive all accrued unpaid fees, reimbursement of expenses, and other compensation incurred before his resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

**5.11 <u>Successor Liquidating Trustee.</u>**

In the event that a Liquidating Trustee is removed, resigns, or otherwise ceases to serve as Liquidating Trustee, a successor Liquidating Trustee may be appointed by motion of a party-in-interest, subject to approval by the Bankruptcy Court, or sua sponte by order of the Bankruptcy Court.

**5.12 <u>Third Parties.</u>**

There is no obligation on the part of any party transacting business with the Confirmed Debtor or any agent of the Confirmed Debtor (including the Liquidating Trustee) to: (a) inquire into the validity, expediency, or propriety of any transaction, (b) inquire into the authority of the Liquidating Trustee, or any agent of the Liquidating Trustee, to enter into or consummate the transaction, or (c) to monitor the application of money or other consideration paid or delivered to the Confirmed Debtor

**5.13 <u>Role of the Liquidating Trustee</u>.**

In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee shall, among other things, have the rights, powers and duties: (i) to hold, manage, convert to cash, and distribute the Liquidating Trust Assets, including prosecuting and resolving the Causes of Action belonging to the Liquidating Trust; (ii) to hold the Liquidating Trust Assets for the benefit of the Liquidating Trust beneficiaries who are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Confirmation Date; (iii) in the Liquidating Trustee's reasonable business judgment to investigate, prosecute, compromise, settle, liquidate, dispose of, and/or abandon the Liquidating Trust Assets on behalf of the Estate, the Confirmed Debtor and/or Liquidating Trust, including rights, Causes of Action or litigation of such Liquidating Trust for the purpose of distributing the proceeds of such rights, Causes of Action or litigation to the Liquidating Trust beneficiaries; (iv) to monitor and enforce the implementation of the Plan; (v) to file all Tax Returns and regulatory forms, returns, reports and other documents required with respect to the Liquidating Trust; (vi) in the Liquidating Trustee's reasonable business judgment, to reconcile and object to Claims, and manage, control, prosecute and/or settle on behalf of the Estate, Confirmed Debtor and/or Liquidating Trust objections to Claims on account of which the Liquidating

Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan; (vii) to hold, manage, and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority; (viii) to act as a signatory for the Debtor for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of the Debtor's assets; (ix) to take all necessary action and file all appropriate motions to obtain an order closing the Bankruptcy Case; and (x) to take such other and further actions as are not prohibited by the Plan and are not inconsistent with the Plan and the Liquidating Trust Agreement. In all circumstances, the Liquidating Trustee shall act in furtherance of the purpose of the Liquidating Trust. Confirmation of the Plan and the occurrence of the Effective Date shall constitute authorization for the Liquidating Trustee, without a further order of the Bankruptcy Court, to sell, lease, exchange, transfer, convey or otherwise dispose of any Asset free and clear of all liens, claims and interests pursuant to Section 363(f) of the Bankruptcy Code, with all valid liens against the Asset attaching the Net Proceeds of the sale of the Asset to the same extent, priority and validity as existed at the time of the sale. The Liquidating Trustee shall not invest or reinvest any Assets other than in a Permitted Investment.

**5.14    Liability of Liquidating Trustee.**

(a)    Standard of Care. The Liquidating Trustee shall not be liable for any action taken or omitted to be taken by him in good faith and in the exercise of reasonable judgment and believed to be within the discretion or power conferred by the Plan or be responsible for the consequences of any act or failure to act, except for bad faith, gross negligence or willful misconduct. The Liquidating Trustee shall not have any fiduciary relationship with any party by virtue of the Plan except as specifically set forth in this Agreement:

(i) The Liquidating Trustee shall not, solely by virtue of his position as Liquidating Trustee, be liable or in any way responsible for the acts or omissions of the Debtor, their boards of directors, officers, employees, or agents, that occurred prior to the Effective Date.

(ii) Unless indemnified to his satisfaction against liability and expense, the Liquidating Trustee shall not be compelled to do any act or to take any action toward the execution or enforcement of the powers created under the Plan or to prosecute or defend any suit in respect of the Plan. If the Liquidating Trustee requests approval from the Bankruptcy Court with respect to any act or action in connection with the Plan, the Liquidating Trustee shall be entitled (but shall not be required) to refrain (without incurring any liability to any person by so refraining) from such act or action unless and until he has received such instructions or approval. In no event shall the Liquidating Trustee or any of his representatives be required to take any action which he reasonably determines could lead to criminal or civil liability.

(iii)     The Liquidating Trustee shall not be responsible in any manner to the Debtor, the Confirmed Debtor, the Estate, any holder of a Claim or Equity Interest, or any other Person or Entity for:

(a) the creditworthiness of any party and the risks involved to the Confirmed Debtor or such holder or party-in-interest;

(b) the effectiveness, enforceability, genuineness, validity, or any due execution of the Plan as to any person other than the Liquidating Trustee;

(c) any representation, warranty, document, certificate, report, or statement made herein or furnished hereunder or in connection with the Plan that does not constitute a breach of the standard of care set forth in this section 5.13 of the Plan on the part of the Liquidating Trustee;

(d) the existence, priority or perfection of any existing Lien;

(e) the investment of the Assets, or their proceeds, in any Permitted Investments;

(f) or to any retirement, employee benefit, or pension plan of the Debtor in excess of the amounts available to be distributed from such plans, or

(g) the observation or compliance with any of the terms, covenants, or conditions of the Plan on the part of any Person or Entity other than the Liquidating Trustee.

(iv) The holders of Claims or Equity Interests and parties-in-interest, by voting for the Plan and/or accepting the benefits of the Plan, have agreed not to sue or otherwise pursue or seek damages from the Liquidating Trustee except for actions or omissions which violate the standard of care set forth in this section 5.13 of the Plan.

(b)     No Liability for Acts of Predecessor.  No successor Liquidating Trustee shall be in any way responsible for the acts or omissions of any preceding Liquidating Trustee, nor shall he be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Trustee expressly assumes such responsibility.  Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement of Assets furnished to such successor Liquidating Trustee by any preceding Liquidating Trustee and shall be responsible only for those Assets included in such statement.

(c)    <u>No Implied Obligations</u>.  The Liquidating Trustee's liability shall be limited to the performance of such duties and obligations as are specifically set forth in the Plan.  The Liquidating Trustee shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties in the Plan, in the Disclosure Statement or in any documents or instrument evidencing or otherwise constituting a part of the Assets.  The Liquidating Trustee makes no representations as to the value of the Assets.

(d)    <u>Reliance by Liquidating Trustee on Documents or Advice of Counsel or Other Persons</u>.  The Liquidating Trustee may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel, statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is believed by the Agent to be genuine and to be signed or presented by the proper persons.  Subject to his obligation to meet the standard of care described in this section 5.13, the Liquidating Trustee shall have no liability for any act which he may do or omit to do in reliance upon the foregoing.

(e)    <u>No Personal Obligation for the Debtor' Liabilities</u>.  Holders of Claims and Equity Interests, and other persons transacting business with the Liquidating Trustee in his capacity as Liquidating Trustee, shall be limited to the Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of the Plan, and the Liquidating Trustee shall have no personal obligation to satisfy any such liability.

## 5.15    <u>Indemnification of Liquidating Trustee</u>.

The Liquidating Trustee, or the individuals comprising the Liquidating Trustee, as the case may be, and the Liquidating Trustee's agents and professionals, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless and reimbursed for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.  Any claim of the Liquidating Trustee (and the other parties entitled to indemnification under this subsection) to be indemnified, held harmless or reimbursed shall be satisfied solely from the Liquidating Trust Assets.  The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

### 5.16    Vesting of Estate Powers.

Upon the Effective Date, the Liquidating Trustee shall be vested with the standing of and with all rights, powers and benefits afforded to a "trustee" under the Bankruptcy Code with respect to all of the Liquidating Trust Assets and rights belonging to the Estate and/or their capacity as Debtor-in-possession, including, without limitation the standing and authority to commence, prosecute and compromise objections to Claims and Causes of Action, whether initially filed as a debtor-in-possession or as may be filed as the Confirmed Debtor.  The Liquidating Trustee shall stand in the same position as the Debtor did as Debtor-in-possession and/or as its Estate with respect to any right the Debtor-in-possession and/or the Estate may have had to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Liquidating Trustee shall succeed to all of the Debtor-in-possession's and/or the Estate' rights to preserve, assert or waive any such privilege.  The Liquidating Trustee shall have the exclusive authority to exercise, among other things, all of the foregoing rights on behalf of the Debtor and the Confirmed Debtor.

### 5.17    Federal Income Tax Treatment of the Liquidating Trust.

For all United States federal income tax purposes and for state tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee and the Liquidating Trust beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the applicable Liquidating Trust as: (i) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to those holders of Allowed Claims receiving Liquidating Trust Beneficial Interests relating thereto, followed by (ii) the transfer by such beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for the Liquidating Beneficial Interests. Accordingly, those holders of Allowed Claims and Equity Interests receiving Liquidating Trust Beneficial Interests shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to the Unresolved Claims Reserve).  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

### 5.18    Tax Reporting.

(a) Following the Effective Date, the Liquidating Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Debtor and the Liquidating Trust, all Tax Returns required to be filed or that the Liquidating Trustee otherwise deems appropriate, including the filing of amended Tax Returns or request for refunds.  In furtherance thereof, the Debtor shall execute on or prior to the Effective Date a power of attorney authorizing the Liquidating Trustee to correspond with any taxing authorities on behalf of the Debtor and to sign, collect, negotiate, settle and administer tax payments and Tax Returns described in the Plan to the

same extent as if the Liquidating Trustee was the Debtor, *provided, however*, the Liquidating Trustee shall not have or incur any liability for payment of taxes or other amounts that are or become due to state and federal taxing authorities as a result of the Liquidating Trustee's exercise of powers pursuant to this paragraph.

(b) The Liquidating Trustee shall file Tax Returns for the Liquidating Trust treating the Liquidating Trust as grantor trusts pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this section. The Liquidating Trustee shall also annually send to each Liquidating Trust Beneficiary a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their United States federal income Tax Returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on the United States federal income Tax Returns. The Liquidating Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidating Trust that are required by any governmental unit.

(c) As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtor, the Liquidating Trustee and the Liquidating Trust Beneficiaries) for all United States federal income tax purposes.

(d) Allocations of the Liquidating Trust's taxable income among the Liquidating Trust Beneficiaries shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the applicable Liquidating Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Confirmation Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(e) Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) timely elect to treat any Liquidating Trust Assets allocable to the applicable Unresolved Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9; and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Liquidating Trustee, the Debtor and the Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(f) The Liquidating Trustee shall be responsible for the payment, out of the applicable Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or its assets.

(g) The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust or the Debtor under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust or the Debtor for all taxable periods through the dissolution of the Liquidating Trust.

(h) Notwithstanding the foregoing, the Debtor shall file all required state and federal tax returns for all periods prior to the Effective Date as and when such tax returns are due and shall pay all required amounts due pursuant to such tax returns (if any) to all taxing authorities.

**5.19    Non-Transferability of the Liquidating Trust Beneficial Interests.**

The Liquidating Trust Beneficial Interests shall not be certificated and shall not be transferable or assignable except by will, intestate succession or operation of law.

**5.20    Distribution of the Liquidating Trust Assets.**

The Liquidating Trustee in its sole and absolute discretion may, but shall not be obligated, to make an initial distribution and any interim distributions of all Cash in accordance with the Liquidating Trust Agreement. With respect to any distribution, the Liquidating Trustee may, in his sole and absolute discretion, establish and retain reserves (i) on account of Disputed Claims and any Estate Setoff; (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation; (iii) as are necessary to pay reasonably incurred and anticipated expenses (including any taxes imposed on the

Liquidating Trust or in respect of the Liquidating Trust Assets, and any incurred or anticipated professional fees and expenses); and (iv) as are necessary to satisfy other liabilities incurred and anticipated by the Liquidating Trust or imposed on the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

**5.21** **Costs and Expenses of the Liquidating Trust.** The costs and expenses of the Liquidating Trust, including the fees and expenses of the Liquidating Trustee and Liquidating Trust's retained professionals shall be paid out of the Liquidating Trust Assets. Professional and other fees and expenses incurred in connection with the prosecution and settlement of any Claims shall be considered costs and expenses of the Liquidating Trust.

**5.22** **Compensation of the Liquidating Trustee.** The Liquidating Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar roles.

**5.23** **Retention of Professionals by the Liquidating Trustee.** The Liquidating Trustee may retain and compensate attorneys and other professionals to assist in its duties as the trustee of the Liquidating Trust on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval. Without limiting the foregoing, the Liquidating Trustee may retain any professional that represented parties in interest in the Bankruptcy Case.

**5.24** **Corporate Action.**

All matters provided for in the Plan involving any corporate action required by the Debtor or the Confirmed Debtor in connection with the Plan shall be deemed to be authorized, and shall be in effect, without any requirement of further action by the Confirmed Debtor, their agents, representatives, members, managers, officers, directors or Affiliates. Confirmation of the Plan shall constitute authorization for the Liquidating Trustee to take, on behalf of each of the Confirmed Debtor, all action necessary to effectuate the terms of this Plan.

**5.25** **Organization Documents and Good Standing.**

As of the Effective Date, the Debtor's Organization Documents shall be deemed amended as necessary to effectuate the terms of the Plan and shall become the Organization Documents of the Confirmed Debtor. To the extent that there is any inconsistency between the Plan and any of the Organization Documents, the terms of the Plan shall control. To the extent the Debtor is not in compliance as of the Effective Date with any state or local law requirements necessary to remain as an organized legal entity in good standing and/or remain authorized as organized legal entities to conduct business in any jurisdiction, the Debtor and/or the Confirmed Debtor, as the case may be, shall be deemed to be in compliance with any such laws if they comply with such laws on the later of six months after the Effective Date, or upon 30 days after notice of such alleged non-compliance by the applicable governmental authority.

Upon Confirmation, the Organization Documents shall be deemed amended by the addition of the following provision: Under no circumstances will the Debtor or the Confirmed Debtor issue any non-voting securities.

### 5.26    Preservation of Causes of Action.

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Non-Appealable Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, (a) the Liquidating Trustee will exclusively retain and may enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(A) of the Bankruptcy Code, any Claims, Causes of Action and demands and rights relating thereto that the Debtor or its Estate may hold against any person or entity, including against any insiders, and (b) no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation, consummation of effectiveness of the Plan.  Among the Causes of Action that are preserved are the following: (i) Avoidance Actions, including, without limitation, those set forth on the Debtor' respective Statement of Financial Affairs that have been filed with the Bankruptcy Court ; (ii) Rights of setoff, counterclaim and recoupment; (iii) claims and defenses on contracts or for breaches of duties imposed by law; (iv) the right to object to claims or interests; (v) claims and defenses pursuant to Section 362 of the Bankruptcy Code; (vi) claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and usury; (vii) claims and defenses for the violation of M.G.L. c. 93A; (viii) claims and defenses for unjust enrichment; (ix) claims for tax refunds; and (x) pre-petition litigation in which the Debtor was the plaintiff.

### 5.27    Compromises.

After the Effective Date and except as otherwise provided in the Plan, the Liquidating Trustee shall have the exclusive authority, without further Bankruptcy Court order or notice to creditors and/or parties in interest, to compromise, settle and/or otherwise dispose of any disputed Claim and/or Causes of Action.

### 5.28    Bond and Insurance Requirements.

On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee shall procure a bond in an amount equal to one hundred and fifty percent (150%) of the aggregate of the Debtor' Cash.  The bond shall be written by an insurance company authorized to do business in the Commonwealth of Massachusetts and written on a standard and customary bond form.  The Liquidating Trustee may adjust the amount of the Bond in his business judgment; provided that,

in no event shall the amount of the bond be less than the aggregate of the Debtor' Cash on hand unless the amount of the Cash on hand is de-minimis.

**5.29    Dissolution of the Committee.**

The Committee shall dissolve automatically on the Effective Date. Upon such dissolution, its members, professionals, and agents shall be released from any further duties and responsibilities in the Bankruptcy Case, except with respect to applications for Professional Fee Claims or the reimbursement of expenses incurred as a member of the Committee.

**5.30    Dissolution of the Debtor.**

Upon the completion of the administration of all of the Debtor's Assets pursuant to the Plan, the Confirmed Debtor shall be deemed to be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Confirmed Debtor or payments to be made in connection therewith. The Confirmed Debtor shall not be required to file any documents, or take any other action, to withdraw their business operations from any states in which the Debtor were previously conducting business operations.

**5.31    Dissolution of the Liquidating Trust.**

The Liquidating Trust shall be dissolved at the earlier of (even if creditors have not been paid in full) (i) all of the Liquidating Trust Assets having been distributed pursuant to the Plan and the Liquidating Trust Agreement; (ii) the Liquidating Trustee determining, in its sole discretion, that the administration of the Liquidating Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit; or (iii) all distributions required to be made by the Liquidating Trustee under the Plan and the Liquidating Trust Agreement having been made; provided, however, that in no event shall any of the Liquidating Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion, determines that a fixed period extension (not to exceed two years, and without the need for a favorable no action letter from the United States Securities and Exchange Commission or a favorable private letter ruling from the United States Internal Revenue Service that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets. If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, that the expense of administering any of the Liquidating Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, the Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Liquidating Trust; (ii) to donate such remaining balance to a charitable organization or a charitable trust that is unrelated to the Debtor, the Liquidating Trust, and any insider of the Liquidating

Trustee; and (iii) dissolve the Liquidating Trust. Upon dissolution of the Liquidating Trust, the Liquidating Trustee shall be discharged from his role as trustee of the Liquidating Trust.

**5.32    Final Decree.**

The Liquidating Trustee may prepare, file and prosecute one or more motions requesting that the Bankruptcy Court enter a Final Decree in the Bankruptcy Case.

## ARTICLE VI

## DISTRIBUTIONS ON CLAIMS, RESOLUTION OF DISPUTED CLAIMS, TREATMENT OF LIENS, ESTATE SETOFF

**6.1    Method of Distributions Under the Plan.**

(a)    <u>In General</u>. Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made by, or on behalf of, the Confirmed Debtor or the Liquidating Trustee to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules or any proof of claim filed by or on behalf of such holder that provides an address for such holder different from the address reflected on the Schedules. The Liquidating Trustee shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b)    <u>Form of Distributions</u>. Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Liquidating Trustee pursuant to the Plan shall be made by such instruments or acts as the Liquidating Trustee determines in its sole and absolute discretion, and may be, without limitation, by check or by wire transfer.

(c)    <u>Distributions to be on Business Days</u>. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    <u>Fractional Dollars</u>. Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less and rounding up in the case of more than $0.50).

(e)    <u>Distributions to Holders as of the Distribution Record Date</u>. As of the close of business on the Distribution Record Date, the claims register shall be closed. The Liquidating Trustee shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date and shall instead be entitled to recognize and deal

for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

## 6.2 Objections to Disputed Claims.

Prior to the Effective Date, any objections to Claims against the Debtor shall be prosecuted by the Proponents, or either of them. On and after the Effective Date, any objections to Claims against the Debtor shall be prosecuted exclusively by the Liquidating Trustee and filed within 60 days of the Effective Date.

## 6.3 Estimation of Claims.

The Proponents or the Liquidating Trustee, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Confirmed Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim. In the event the Bankruptcy Court estimates any Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the Bankruptcy Court determines the maximum limitation of a Disputed Claim, such determination shall not preclude the Proponents and/or the Liquidating Trustee from pursuing any supplemental proceedings to object to any payment of such Claim. All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## 6.4 Disputed Claims and Disputed Equity Interest Reserve.

(a)     Establishment.  A reserve shall be maintained equal to 100% of the distributions to which holders of Disputed Claims and Disputed Equity Interests would be entitled under the Plan if such Disputed Claims and Disputed Equity Interests were Allowed Claims or Allowed Equity Interests, as applicable, or such lesser amount as required by a Non-Appealable Order. The Liquidating Trustee shall have and shall retain all rights with respect to any Estate Setoff applicable to funds in any Disputed Claims Reserve.

(b)     Investment of Cash.  Cash in the Disputed Claims Reserve may be invested only in Cash Equivalents having maturities sufficient to enable the holder of the Disputed Claims Reserve to make all necessary payments to holders of Disputed Claims if, and when, such Disputed Claims become Allowed Claims. Any interest, income, distributions or accretions on account of such investment in Cash Equivalents in the Disputed Claims Reserve shall be for the sole benefit and account

of the Liquidating Trustee, and the Liquidating Trustee shall be solely responsible for the payment of any income or other taxes arising therefrom.

(c)    Distributions Upon Allowance of Disputed Claims and Disputed Equity Interests.    The holder of a Disputed Claim or Disputed Equity that becomes an Allowed Claim or Allowed Equity Interest, as applicable, after the Effective Date shall receive distributions of Cash (if any is owed after application of any Estate Setoff) from the Disputed Claims Reserve as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (as applicable) pursuant to a Non-Appealable Order.    Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to the holder of such a Claim or Equity Interest under the Plan if the Disputed Claim or Disputed Equity Interest had been an Allowed Claim or Allowed Equity Interest on or prior to the Effective Date.    No holder of a Disputed Claim or Disputed Equity Interest shall have any claim against the respective Disputed Claims Reserve or the Liquidating Trust with respect to such Claim until the Disputed Claim and/or Disputed Equity Interest, as applicable, shall become an Allowed Claim.

### 6.5    Reversion of Unclaimed Checks and Disputed Claims Reserve.

The following amounts shall revert to and be vested in the Liquidating Trustee: (a) the amount of any checks issued for distributions to the holders of Allowed Claims under the Plan that remain uncashed for a period of 120 days after the date of such distribution; and (b) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash actually distributed on account of such Disputed Claim.

### 6.6 Distribution Record Date

For all purposes under applicable law, the Distribution Record Date shall be the date and time for the purpose of determining which Persons and Entities are entitled to receive and retain any and all Distributions on account of any Equity Interests, regardless of the date of or number of Distributions, and the Distribution Record Date shall be, without limitation, the record date, the ex-date and the ex-dividend date as may be applicable with respect to Distributions for purposes of sections 11120 (d) and (f) of the *"Uniform Practice Code"* of the Financial Industry Regulatory Authority.

### 6.7 Liens

The Liens held by the holder of an Allowed Secured Claims shall be treated as follows:

(a) <u>Retention of Liens</u>.  Any Liens held by the holder of an Allowed Secured Claim shall be retained on the Encumbered Assets to secure the payment of the Allowed Secured Claim pursuant to the Plan, to the same extent, and with the same priority and validity, as such Liens enjoyed with respect to property of the Debtor prior to the commencement of this Bankruptcy Case.

(b) <u>No Liens on Unencumbered Assets</u>.  None of the Liens of any Person or Entity shall extend to the Unencumbered Assets (including, without limitation, the Bonus), and the Unencumbered Assets (including, without limitation, the Bonus) shall be and remain free and clear of any and all Liens held by holders of Allowed Secured Claims.

(c) <u>Discharge of Liens</u>.  Upon the payment provided for in the Plan to the holder of an Allowed Secured Claim: (i) all Liens securing the Allowed Secured Claim shall be deemed canceled, discharged and released, and (ii) the holder of the Allowed Secured Claim shall deliver to the Liquidating Trustee on behalf of the Confirmed Debtor, within five (5) Business Days of the payment provided for in the Plan, all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of such Liens.

### 6.8   Obligation to Provide Tax Forms.

*No Person or Entity entitled to a payment or distribution under the Plan, from the Estate or from the Confirmed Debtor, shall receive such distribution or payment until the Person or Entity provides the Liquidating Trustee with: (a) a W-9 or similar federal or state tax form, and (b) such other tax forms as are reasonably requested by the Liquidating Trustee (collectively the "<u>Tax Forms</u>").  If any Person or Entity holding an Allowed Claim fails to provide a Tax Form to the Liquidating Trustee after two written requests for a Tax Form, such Person's Allowed Claim shall be disallowed and expunged without further order of the Bankruptcy Court.*

### 6.9   Effect of Estate Setoff

The Liquidating Trustee shall deduct from any distribution (including, without limitation, from the Disputed Claims Reserve) the amounts necessary to satisfy in full any applicable Estate Setoff.  The holder of any Claim, Equity Interest or Lien subject to an Estate Setoff shall not receive anything under this Plan (including any

distributions) unless and until the amount of the Estate Setoff is paid to the Liquidating Trustee or satisfied in full to the satisfaction of the Liquidating Trustee.

# ARTICLE VII
# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1    Assumption of Executory Contracts and Unexpired Leases.**

Pursuant to Sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any executory contract or unexpired lease (excluding insurance policies) that (a) has not expired by its own terms on or prior to the Effective Date, (b) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Effective Date, (c) is not the subject of a motion requesting the authority to assume or reject the contract or lease that is pending at the time of the Effective Date, or (d) is not designated by the Plan Proponents as being a executory contract or unexpired lease to be assumed at the time of confirmation of the Plan, shall be deemed rejected on the Effective Date.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute the approval of the rejection of executory contracts and unexpired leases pursuant to this section of the Plan and Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

**7.2    Payments Related to The Assumption of Executory Contracts and Unexpired Leases.**

(a)     <u>Payment of Claims Arising from Assumed Contracts and Leases</u>.  Except as provided in any written agreement between the Debtor and a counter-party to an executory contract or unexpired lease, any Allowed Claims arising from the assumption of an executory contract or unexpired lease will receive, in full and complete satisfaction, settlement, release and discharge of such Claims, payment in the ordinary course of business as and when such Allowed Claims become due pursuant to such executory contract or unexpired lease.

(b)     <u>Disputed Claims and Bar Date</u>.  If there is a dispute regarding (i) the amount of any claim arising from the assumption of an executory contract or unexpired lease, (ii) the ability of the Debtor or any assignee to provide "adequate assurance of further performance" within the meaning of Section 365 of the Bankruptcy Code, under a contract or lease to be assumed, or (iii) any other matter pertaining to the assumption or assumption and assignment of any contract or lease, the payment of any Claim related to the foregoing will be made following entry of a Non-Appealable Order resolving the dispute and approving the assumption.

### 7.3 Rejection Damage Claims.

If the rejection of an executory contract or unexpired lease by the Debtor results in a Claim by the other party or parties to such contract or lease, any claim for damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Liquidating Trust or Liquidating Trustee, the Confirmed Debtor and their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon the Plan Proponents and the Liquidating Trustee on or before thirty (30) days following the later to occur of: (a) the rejection of such executory contract or unexpired lease, and (b) the Effective Date. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan. The Liquidating Trustee shall have the right to object to any such Claim for rejection damages.

## ARTICLE VIII

## RELEASE OF CLAIMS

### 8.1 Satisfaction of Claims.

Except as otherwise provided in the Plan or in an agreement by the Plan Proponents or the Liquidating Trustee that has been approved by the Bankruptcy Court, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction, settlement and release as against the Debtor and the Confirmed Debtor of any debt or obligation of the Debtor that arose before the Effective Date, and any debt of the Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against the Debtor or the Estate of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim based on such debt, obligation or Equity Interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has accepted the Plan.

### 8.2 Injunction Relating to the Plan.

*As of the Effective Date, all Persons and Entities are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee and/or the Confirmed Debtor, on account of, or respecting any Claims, debts, rights, obligations, Causes of Action or liabilities against the Debtor and/or the Estate, except to the extent expressly permitted under the Plan.*

### 8.3 Releases.

Except as otherwise set forth in the Plan, as of the Effective Date, in consideration for, among other things, the obligations of the Debtor under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, (a) each holder of a Claim or Equity Interest that votes in favor of the Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Person that has held, holds or may hold a Claim or Equity Interest or at any time was a creditor or equity holder of the Debtor and that does not vote on the Plan or votes against the Plan, in each case will be deemed to forever release, waive and discharge the Debtor and the Estate of and from any and all Claims (including any derivative claims), obligations, suits, judgments, damages, demands, rights, causes of action and liabilities (other than the right to enforce the obligations of all Persons or Entities under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Committee, the Bankruptcy Case or the Plan that such Entity has, had or may have against any Debtor, the Estate, the Assets, the Confirmed Debtor and/or the Confirmed Debtor's Assets. Nothing in this section 8.3 of the Plan shall be deemed to release a non-Debtor third party.

### 8.4 Cancellation of Existing Indebtedness and Liens.

Except as may otherwise be provided in the Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims, together with any and all Liens securing same, shall be canceled and released without further act or action by any Person or Entity under any applicable agreement, law, regulation, order or rule, (b) the obligations of the Debtor thereunder shall be deemed cancelled and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, will revert to the Liquidating Trustee. To the extent deemed necessary or advisable by the Liquidating Trustee, any holder of a Claim shall promptly provide the Confirmed Debtor and him, as applicable, with an appropriate instrument of cancellation or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation or release, including the cancellation or release of any Lien securing such Claim.

### 8.5 Exculpation.

Except as otherwise set forth in the Plan, neither the Debtor, the Committee, the Committee's members, the Liquidating Trustee nor any of their respective employees, advisors, attorneys, agents, successors or assigns, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of the Bankruptcy Cases, the pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan occurring prior to the Effective Date, provided that: (a) the terms of this Section 8.5 shall not apply to any liability for willful misconduct or ultra vires acts, and (b) nothing contained herein shall relieve any person, including the Liquidating Trustee, from their duties and responsibilities to perform under the Plan, including to make the payments required by the terms of the Plan.

### 8.6    Setoff.

Except as otherwise provided in the Plan, nothing contained in the Plan shall constitute a waiver or release by the Liquidating Trustee, the Estate and/or the Confirmed Debtor of any rights of setoff the Estate and/or the Confirmed Debtor may have against any Person or Entity.

## ARTICLE IX

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

### 9.1    Conditions Precedent to Effect Date of the Plan.

Subject to Section 9.2 of the Plan, the following are conditions precedent to the occurrence of the Effective Date:

(a)    The Confirmation Order, in form and substance reasonably acceptable to the Committee shall have been entered by the Bankruptcy Court and shall not be subject to any stay; and

(b)    The Confirmation Order shall have become a Non-Appealable Order.

### 9.2    Waiver of Conditions.

Except for the condition set forth in Sections 9.1(a) of the Plan, the Plan Proponents may waive the other condition precedent to the effectiveness of the Plan set forth in Section 9.1 without notice to any creditors or parties in interest and without Bankruptcy Court approval.  The failure to satisfy or waive any condition precedent to the occurrence of the Effective Date may be asserted by the Liquidating Trustee, on behalf of the Confirmed Debtor, regardless of the circumstances giving rise to the failure of such condition to be satisfied.

### 9.3 Effect of Non-occurrence of Conditions to the Effective Date.

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, or (b) prejudice in any manner the rights of the Debtor or constitute an admission, acknowledgement, offer or undertaking by the Debtor.

### 9.4 Default

If any Person or Entity fails or refuses to perform obligations imposed upon them pursuant to this Plan, then any other Person or Entity damaged by such failure or refusal shall have and retain the following rights and remedies:

    a. To seek to compel specific performance of this Plan,

    b. To seek to convert this case to a case under chapter 7 of the Bankruptcy Code, or to dismiss this case, and

    c. To seek an award of any other remedy to which such Person or Entity may be entitled under applicable law.

## ARTICLE X

## RETENTION OF JURISDICTION

From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the Bankruptcy Cases and the Plan, as legally permissible, pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code including, without limitation:

(a)    To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification or estimation of any Claims or Equity Interests or any controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or to estimate any Disputed Claim;

(b)    To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses, authorized pursuant to the Plan or the Bankruptcy Code;

(c)    To hear and determine any and all applications (whether or not pending at or on the Effective Date) related to the rejection, assumption or assumption and assignment of executory contracts and unexpired leases to which any Debtor is a party, and to hear, determine and allow any Claims resulting therefrom;

(d)     To enforce and adjudicate the provisions of the Plan subject to the terms of the Plan;

(e)     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)     To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

(g)     To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(h)     To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(i)     To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(j)     To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

(k)     To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(l)     To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions or other provisions;

(m)     To hear and determine any Claims, rights, demands and Causes of Action arising prior to the Effective Date; and

(n)     To enter an order and/or final decree concluding the Bankruptcy Cases.

## ARTICLE XI

## MISCELLANEOUS

## 11.1   Continuation of Injunctions or Stays.

All injunctions or stays provided for in the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Liquidating Trustee shall have concluded the administration of the Assets and the Plan.

## 11.2 Exemption from Transfer Taxes.

In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, and the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

## 11.3 Amendment or Modification of the Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by the Proponents at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Confirmed Debtor may, without notice to holders of Claims insofar as it does not materially and

adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan Document.

### 11.4 Severability.

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Proponents, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

### 11.5 Revocation or Withdrawal of the Plan.

The Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Proponents revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

### 11.6 Binding Effect.

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

### 11.7 Notices.

All notices, requests and demands to or upon the Debtor or the Confirmed Debtor shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

Top Tier Site Development, LLC

JAMES P. EHRHARD, ESQ.
Ehrhard & Associates, P.C.
250 Commercial Street, suite 410
Worcester, MA 01608
508.791.8411
Fax: 508.752.6168

ehrhard@ehrhardlaw.com

with a copy to:

JEFFREY D. STERNKLAR, LLC
225 Franklin Street
26th Floor
Boston, MA  02110
Attn: Jeffrey D. Sternklar, Esq.
Telephone:  (617) 396-4515
Facsimile:  (617) 507-6530
E-mail:  jeffrey@sternklarlaw.com

**11.7   Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

**11.8   Withholding and Reporting Requirements.**

All Persons and Entities shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**11.9   Post-Confirmation Fees, Final Decree.**

The Liquidating Trustee will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, the Liquidating Trustee will serve the United States Trustee with a monthly financial report for each month (or portion thereof) the case is open. The monthly financial report shall include the following:

(1) a statement of all disbursements made during the course of the month, whether or not pursuant to the Plan;

(2) a summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the plan;

(3) Liquidating Trustee's projections as to its continuing ability to comply with the terms of the plan;

(4) a description of any other factors which may materially affect the Liquidating Trustee's ability to consummate the plan; and

(5) an estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

### 11.10    Headings.

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

### 11.11 Inconsistency.

In the event of any inconsistency between the Plan and the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

*(Signature appears on following page)*

Top Tier Site Development, Corp,

By: _____

Robert J. Santoro
President

**AND**

By its counsel,

*/s/ James P. Ehrhard* ,
James P. Ehrhard (BBO #651797).
Ehrhard & Associates, P.C.
250 Commercial Street, suite 410
Worcester, MA 01608

The Official Committee of Unsecured
Creditors,

By its counsel,

*/s/ Jeffrey D. Sternklar*
Jeffrey D. Sternklar (BBO#549561)
JEFFREY D. STERNKLAR, LLC
225 Franklin Street
26th Floor
Boston, MA 02110

Telephone: (617) 396-4515
Facsimile: (617) 507-6530

Telephone: 508.791.8411
Facsimile: 508.752.6168

Dated: December 6, 2018

By signing below, I signify my agreement to the terms and conditions of the foregoing Plan, including, without limitation, (i) my agreement to fund and pay the Bonus, and (ii) my authorization and direction to Jeffrey D. Sternklar, as escrow agent, to remove from escrow and turnover to the Liquidating Trustee the "Initial Bonus Payment" on the Effective Date in accordance with the terms and conditions of the foregoing Plan.

_____

Charles R. Wing, Jr
Individually

INFINITE SOLUTIONS, INC.

_____

BY: Charles R. Wing, Jr
ITS: President

_____

Robert J. Santoro
Individually